FREDERICK RECK, Appellant, *v.* THE PHENIX INSURANCE COMPANY, Respondent.

Upon trial of an action upon a policy of marine insurance, one question was as to whether the vessel was lost before or after the policy expired. There was evidence authorizing the inference that it was before. The plaintiffs conceded that the question was one of fact, but defendant refused to go to the jury on that question, and each party requested the court to direct a verdict in its favor. The court stated that neither party desired to have the facts submitted to the jury, and upon the inferences he was permitted to draw from the evidence, directed a verdict for plaintiff. *Held*, no error.

The policy contained a warranty that the vessel insured should not be loaded more than the "registered tonnage" with lead, marble, coal or iron on any one passage. *Held*, that the term "registered tonnage" had reference to that specified in the register under which the vessel sailed, and that upon an allegation of a breach of the warranty, the question was as to whether the cargo was of greater weight than that specified in the ship's register.

The vessel was a foreign one. *Held*, that the laws of measurement existing under acts of congress had no application, as the vessel under our law was not qualified to obtain an American register.

The policy also contained a warranty that the vessel would not use certain ports specified, between certain dates. The written application for the policy bore date at a day between the dates specified, and stated that the ship was then at one of the prohibited ports. *Held*, that said warranty was waived; and so, that a breach thereof was not a defense to the action.

The policy was issued to a firm "for account of whom it may concern." The ship was at the date of the policy owned by R., one of the firm.

The insurance was effected for the benefit of plaintiff, a creditor of R. and a mortgagee of the ship. Defendant set up as a counter-claim certain notes made or indorsed by the firm. *Held,* that there was no legal basis for the counter-claim.

(Argued October 19, 1891; decided December 1, 1891.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department made November 7, 1889, which set aside a verdict in favor of the plaintiff directed by the trial court, and ordered a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Esek Cowen* for appellant. The appeal to the General Term in this case rested only on questions of law, and no disputed question of fact was, or could properly be, considered by that court. (*Provost* v. *McEncore*, 102 N. Y. 650; *Colligan* v. *Scott*, 58 id. 671; *Winslow* v. *Hicks*, 18 id. 558; *Kirtz* v. *Peck*, 113 id. 222.) The ship was not loaded above the American registry of November, 1862, describing her capacity as 916$\frac{11}{95}$ tons. (Laws of 1851, chap. 134, § 14.) The defendant was estopped from setting up a breach of the warranty that the vessel should not use ports north of Antwerp, between November first and March first. (*Frost* v. *S. M. Ins. Co.*, 5 Den. 154; *Couch* v. *R. G. F. Ins. Co.*, 25 Hun, 469; *Van Schaick* v. *N. F. Ins. Co.*, 68 N. Y. 434; *Bennett* v. *N. B. Ins. Co.*, 81 id. 273.) The insurable interest of the plaintiff and his right to recover upon the policy were abundantly proved. Theodore Ruger was the owner of the vessel. The policy was issued to Ruger Brothers for account of whom it may concern. Such a policy insures the real owner. (*P. M. Ins. Co.* v. *G. W. Ins. Co.*, 65 Barb. 336, 337; *Bidwell* v. *N. W. Ins. Co.*, 19 N. Y. 182.) Proof that Ruger gave plaintiff a mortgage being received without objection, a motion to strike it out was properly denied. (*P. M. S. S. Co.* v. *G. W. Ins. Co.*, 65 Barb. 334.) There was no error in the ruling of the court as to the notes from Ruger Brothers, offered as an offset. (*Risley* v. *P. Bank*, 83 N. Y. 329; *Green* v. *R. Ins. Co.*, 84 id. 572;

*P. M. S. S. Co.* v. *G. W. Ins. Co.*, 65 Barb. 337; *Martin* v. *Kunzmuller*, 37 N. Y. 396; *Lowell* v. *Lane*, 33 Barb. 292.)

*George A. Black* for respondent. There was a breach of the warranty against overloading. (*Hart* v. *S. M. I. Co.*, L. R. [22 Q. B. Div.] 502; *I. S. S. Co.* v. *Tinker*, 94 U. S. 243; *Roberts* v. *Opdyke*, 40 N. Y. 263; *Ins. Co.* v. *Thuring*, 13 Wall. 672; *Greer* v. *Poole*, L. R. [5 Q. B. Div.] 273; 16 Hun, 345; Const. U. S. art. 1, § 8; Laws of 1851, chap. 134, §§ 1, 7; *Many* v. *B. I. Co.*, 9 Paige, 195; *Walls* v. *Bailey*, 49 N. Y. 464; *Harris* v. *Tunbridge*, 83 id. 92.) It was not shown that the vessel was lost during the life of the policy, that is, before December 29, 1866, and the facts and circumstances proven did not warrant the trial judge in directing a verdict for plaintiff. (3 Kent's Comm. 410; *Brown* v. *Nielson*, 1 Caines, 525; *Gordon* v. *Bowne*, 2 Johns. 150; *Oppenheim* v. *Wolf*, 3 Sandf. Ch. 571; *Clifford* v. *T. M. Ins. Co.*, 50 Me. 197.) The warranty "Not to use ports on the Continent of Europe north of Antwerp between November 1st and March 1st," was broken. (*Dow* v. *Whitten*, 8 Wend. 161; *Higginson* v. *Dall*, 13 Mass. 99; *DeHohn* v. *Hartley*, 1 T. R. 343; *Atherton* v. *Brown*, 14 Mass. 152; Marshall on Ins. 249; *Alexander* v. *G. F. Ins. Co.*, 66 N. Y. 467; *Pinder* v. *R. F. Ins. Co.*, 47 id. 114.) If Theodore Ruger was the insured, then the judgment and notes should have been set off as requested. (Code Civ. Pro. § 502; *Shipman* v. *Lansing*, 25 Hun, 290; *Coffin* v. *McLean*, 80 N. Y. 562.)

Brown, J. This action was upon a policy of marine insurance issued by the defendant to Ruger Brothers for account of whom it may concern, and which insured the ship "Elise Ruger" against the perils of the sea for one year from December 29, 1865.

The ship at the date of the policy was owned by Theodore Ruger, and the insurance was effected for the benefit of the plaintiff, a creditor of said Theodore and a mortgagee of the vessel.

The policy, among other things, contained the following warranties : " Warranted not to load more than her registered tonnage with lead, marble, coal or iron, on any one passage."

Also " not to use ports on the continent of Europe north of Antwerp between 1st of November and 1st of March."

The vessel sailed from New York for Yokohama, Japan, on May 26, 1866. She was loaded with about 901½ gross tons of coal. There was evidence that she was seen in October of that year at a place called Pitts Passage, but she was never seen or heard from subsequent to that date, and plaintiff claimed that she was lost on the voyage with all on board.

The defenses urged at the trial were : (1) That the warranties above quoted had been broken; (2) that the proof did not establish a loss within the life-time of the policy ; (3) that there was no evidence of a debt to the plaintiff, and hence no insurable interest in him, and (4) a counter-claim upon certain promissory notes made or indorsed by Ruger Brothers.

At the close of the trial the defendant moved to dismiss the complaint, which was denied. It then moved that a verdict be directed in its favor. It was conceded by the plaintiff that the question whether the vessel was lost before the policy expired was one of fact, but the defendant refused to go to the jury upon that question, and each party thereupon requested the court to direct a verdict in its favor.

The court was apparently of the opinion that the case presented questions of fact, but stated that as neither party desired to have them submitted to the jury, and drawing such inferences from the evidence as he was, under the circumstances, permitted to do, he directed a verdict for the plaintiff.

The question, therefore, presented to us is whether the conclusions of fact which the court made in its decision have support in the evidence.

The General Term sustained the defense resting upon the allegation of a breach of warranty against overloading, and held that the proof showed the registered tonnage of the vessel to be 792.

It appeared that the vessel was built in the United States, and when first launched had an American register, which stated the tonnage to be 916. Subsequently, however, she was sold to a citizen of Hanover, and received a Hanoverian register, and sailed under the Hanoverian flag. This register was lost with the ship, but what was substantially a copy was produced on the trial from the official records of the port where the register was recorded, from which it appeared that the ship's capacity was 351.97 "commercial lasts."

This latter term was one indicating the vessel's capacity or ability to carry a given weight, and a "last" was taken as the equivalent of six thousand pounds.

The General Term was of the opinion, and in it we concur, that the term "registered tonnage" referred to the vessel's carrying capacity as stated in the ship's papers under which she was sailing at the date of the policy, but that learned court fell into the error of holding that 792 tons was the equivalent of 351.97 commercial lasts.

This conclusion was drawn from a law of the German Empire, which included Hanover, and which provided the rule by which the equivalent of lasts could be ascertained in tons, but that law was not enacted until 1872, long after the loss of the ship and, therefore, was not applicable to the case.

It seems to us that the question arising upon the warranty was whether the cargo of coal taken on at New York was of greater weight than that specified in the ship's register as her carrying capacity.

The evident purpose of the provision was to prevent overloading with heavy merchandise and, therefore, the policy limited her cargo to the official rating of the ship or the stated carrying capacity as appeared from the official register under which she sailed. And it appearing that a commercial last was the equivalent of six thousand pounds, the capacity of the ship to carry the specified merchandise was limited by the policy to 2,111,820 pounds, or about $942\frac{2}{3}$ gross tons.

Thus her registered carrying capacity was in excess of her cargo and the warranty was not broken.

The learned counsel for the respondent refers to the law of measurement existing under the acts of congress by which one hundred cubic feet of space within the ship's hold is taken to be a ton, and has argued that the intent of the policy was to limit the cargo to be carried to one ton in weight for each ton of measurement of the ship, and he proved upon the trial an official measurement of the ship as a foreign vessel, made at New York in May, 1866, by which her tonnage capacity appeared to be 857. But we are of the opinion that our law had no application to the case, as the vessel having been a foreign one and under our law not qualified to obtain an American register, the use of the term "registered tonnage" may fairly be presumed to have had reference to the capacity of the ship as it should appear in the register under which she sailed and which, of course, could not have been ascertained under the law of measurement prevailing in this country.

The warranty not to use ports in Europe north of Antwerp between November first and March first we think was waived.

The written application for the policy bearing date January 23, 1866, stated that the ship was then at Rotterdam. That was a port north of Antwerp, but having insured the vessel while lying at that port, the defendant cannot now be permitted to claim that that fact was in violation of any clause of the policy. The argument presented now to the court, however, is that the vessel was not permitted to leave that port during the prohibited months. But there is no evidence in the case which shows that she did leave Rotterdam prior to March first.

The charter party for the ship's voyage dated May tenth, described the vessel as then lying at New York.

The complaint alleged that she arrived in New York about April fourteenth, and one witness stated that she was at that port for about a month before she sailed on her last voyage.

But there is no evidence of when she left Rotterdam, nor of the usual length of the voyage between that port and New York, and assuming that allegation of the complaint to be correct, the court could not determine as a fact that the voyage could not have been made between the dates named.

The question whether the vessel was lost within the lifetime of the policy was one of fact, and in view of the refusal of the defendaat to have it submitted to the jury, the court was permitted to draw the inference fairly arising on the evidence, and we think the conclusion reached has support in the testimony.

The evidence of the debt to the plaintiff was ample and there was no legal basis for the counter-claim of the notes against Ruger Brothers.

We find no error in any of the rulings upon admission of testimony.

The order of the General Term should be reversed and judgment entered upon the verdict, with costs.

All concur.

Order reversed and judgment accordingly.