(3 Misc. Rep. 449.)

KINNEAR v. POWELL et al.

(Superior Court of New York City, General Term. May 1, 1893.)

CONTRACT BETWEEN SHIP OWNER AND BROKER — CABLEGRAM — CONSTRUCTION.
     After some preliminary correspondence between plaintiff, a ship owner in London, and defendants, ship brokers in New York, indicating an intention by the former to send his ship to New York to get a cargo of oil for the east, with a preference for Calcutta, and the passage between plaintiff and defendants of various cablegrams and letters with reference to the charter, which defendants were expected to make, the latter cabled plaintiff an offer which he accepted, fixing the rate, "Bombay 25, sufficient cargo ballasting, Calcutta 21, half," with "the option Bombay—Calcutta direct or combined." *Held*, that the offer meant that there would be at least sufficient cargo left at Bombay to constitute ballast for Calcutta, so plaintiff would be at no expense for ballast, and not that there would be no more cargo left than would constitute such ballast, and plaintiff could not recover the difference between the rate to Calcutta and the rate to Bombay on so much of the cargo as exceeded what was necessary for ballast.

Appeal from trial term.

Action by Adolpheus E. Kinnear against Robert S. Powell and others to recover damages for breach of a contract authorizing de-

fendants to charter plaintiff's vessel to shippers at certain rates. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before SEDGWICK, C. J., and McADAM, J.

Geo. A. Black, for appellant.
Wilcox, Adams & Green, for respondents.

McADAM, J.   The plaintiff, the owner of the ship Lancing, does business in London, Eng., and the defendants are ship brokers in the city of New York.   There was some preliminary correspondence between the parties, indicating an intention on the part of the owner to send the ship to New York to get an oil cargo for the east, with a preference for Calcutta.   The defendants, as ship brokers, were expected to make the charter on behalf of the owner.   Various cablegrams and letters passed between the parties, culminating in an offer which the plaintiff accepted, by which the rate to Bombay was fixed at "25, sufficient cargo ballasting, Calcutta 21, half," with "the option Bombay—Calcutta direct or combined."   On June 12th the defendants negotiated a charter of the vessel for a voyage from New York to Bombay and Calcutta, or to Bombay or Calcutta direct, at charterers' option, as ordered upon signing bills of lading, to carry a cargo of 90,000 cases, 10 per cent., more or less.   The charter provided:

"In case two ports are used in discharging, charterers agree to leave sufficient cargo on board for ballast from Bombay to Calcutta.   The rate of freight is to be 25 cents per case on all cases landed at the former port; not less than 25,000 cases to be landed; and 21½ on balance cargo landed at Calcutta. If discharged in Bombay, only 25 cents; if discharged in Calcutta, only 21 cents."

The total freight earned was $28,125.30.   The ship proceeded to Bombay, where the 25,000 cases were discharged, and it thereafter sailed for Calcutta, where the balance of the cargo was unloaded. The question to be determined is whether the charter as made conforms to the authority given to the defendants, and this depends upon the meaning of the terms used in the defendants' cablegram, "Bombay 25, sufficient cargo ballasting, Calcutta 21, half."   It is undisputed that 25,000 cases were a sufficient ballast for a voyage from Bombay to Calcutta, and the plaintiff claims that the language employed by the defendants conveyed to him the understanding that all the cargo was to be discharged in Bombay at 25 cents, except the 25,000 cases required for ballast, which were to go to Calcutta at 21½ cents, and that, in consequence of the charter not so providing, he has sustained damage to the amount of $2,655.24. If the phrase in dispute had been used in letters of instruction from the plaintiff to the defendants, no liability would have attached to the latter on account of the ambiguity of the words used, for where language is ambiguous, and the agent bona fide adopts a permissible construction, the principal cannot, on the ground that such construction was not intended by him, disown and dishonor the act of the agent.   Ireland v. Livingston, L. R. 2 Q. B. 99, L. R. 5 Q. B. 516, L. R. 5 H. L. 395; Whart. Ag. §§ 224, 248; Benj. Sales, (Perkins'

Ed.) § 590.    The plaintiff contend that, because the ambiguous language was used by the agent, the converse of the rule is applicable, and the phrase is to be interpreted in the sense most beneficial to the plaintiff.    Wright v. Williams, 20 Hun, 322; Jones, Const. Com. Cont. § 228.

The trial judge held that the cablegram by defendants to plaintiff, "Sufficient cargo ballasting Calcutta," meant that there would be at least sufficient cargo left at Bombay to constitute ballast for Calcutta, so that the plaintiff would be under no expense to buy ballast.    The cablegram also admits of the technical construction applied to it by the plaintiff that "sufficient cargo ballasting Calcutta" means enough, adequate to wants, or equal to the end proposed, not more than required for the trip to Calcutta.    Which construction is to control?    The answer to this query naturally suggests another.    Suppose the literal words of the cablegram had been inserted in the charter, what construction would then be placed upon them? for, if the charterers would not in that event have been held to the construction urged against the ship brokers, it is clear the latter are not liable in this action.    The rule requiring instruments to be construed "contra proferentem" is not always of special value, and is most applicable to deeds poll.    In cases of mutual promises, where neither party is more the undertaker than the other, the rule has no application.    2 Pars. Cont. (6th Ed.) 505–510.    Testing the liability of the defendants by this rule, considering the situation and relation of the parties at the time, the subject-matter of the contract, the option and discretion asked for and not refused, the combination of the two ports expressly permitted, the absence of controlling expert evidence proving the meaning among shippers of the technical terms used in the cablegram, we are of opinion that the contract legally bears the construction put upon it by the trial judge, and that such construction must, for the purposes of this case, be adopted as the one controlling.    True, the plaintiff, as an expert, gave his opinion as to the meaning of the technical terms used, and this sustains his construction thereof, but the plaintiff did not ask to go to the jury on that question; but requested the direction of a verdict in his favor.    The defendants, on the other hand, insisted upon the dismissal of the complaint.    It is evident, therefore, that both parties treated the question involved as one of law for the court, and not of fact for the jury.    The plaintiff was interested in the result, and his evidence not controlling, (Elwood v. Telegraph Co., 45 N. Y. 549; Kavanagh v. Wilson, 70 N. Y. 177; Honegger v. Wettstein, 94 N. Y. 252; Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. Rep. 402,) so that the trial court had the right to dispose of all there was to the contention, (Reck v. Insurance Co., 130 N. Y. 160, 29 N. E. Rep. 137; Page v. Voorhies, [City Ct. Brook.] 16 N. Y. Supp. 101; Reilly v. Lee, [Sup.] 16 N. Y. Supp. 313.)    The defendants are not charged with breach of instructions, nor of fraudulent conduct.    All that is claimed against them is that the charter they entered into was not, for the reasons before stated, authorized by the cablegrams and correspondence which passed between the parties, and that they are in consequence liable for the

damages claimed. The fact that the Lancing was a water-ballast ship was unknown to the defendants until after the plaintiff's letter dated June 14th, received long after the charter was made, so that this feature has no bearing whatever upon the rights of the parties, in no manner affects the liability sought to be enforced, and throws no light upon the transaction. Though the question involved is close, and the conclusion reached not free from doubt, we think that substantial justice has been done, and that the judgment appealed from should be affirmed, with costs.