McAdam, J.
The plaintiff, the owner of the ship “Lancing,” does business in London, England, and the defendants are ship brokers in the city of Mew York.
There was some preliminary correspondence between the parties indicating an intention on the part of the owner to send the ship to Mew York to get an oil cargo for the East, with a preference for Calcutta. The defendants, as ship brokers, were expected to make the charter on behalf of the owner. Various cablegrams and letters passed between the parties, culminating in an offer, which the plaintiff accepted, by which the rate to Bombay was fixed at 25, “sufficient cargo ballasting Calcutta 21 half,” with “the option Bombay—Calcutta direct or combined.” On June 12th, the defendants negotiated a charter of the vessel for a voyage from Mew York to Bombay and Calcutta, or' to Bombay or Calcutta direct, at charterers’ option, as ordered upon signing bills of lading, to carry a cargo of 90,000 cases, ten per cent more or less.
The charter provided: “ In case two ports are used in discharging, charterers agree to leave sufficient cargo on board for ballast from Bombay to Calcutta, the rate of freight is to be twenty-five cents per case on all cases landed at the former port; not less than 25,000 cases to be landed, and twenty-one and a half on balance cargo landed at Calcutta; if discharged in Bombay only, twenty-five cents; if discharged in Calcutta only, twenty-one cents.” The total freight earned was $28,125.30. The ship proceeded to Bombay, where the 25,000 cases were discharged, and it thereafter sailed for Calcutta, where the balance of the cargo was unloaded. The question to be determined is whether the charter as made conforms to the authority given to the defendants, and this depends upon the meaning of the terms used in the defendants’ cablegram: “Bombay 25, sufficient cargo ballasting, Calcutta 21, half.” It is undisputed -that 25,000 cases were a sufficient ballast for a voyage from Bombay to Calcutta, and the plaintiff claims that the language employed by the defendants conveyed to him the understanding that all the cargo was to be discharged in Bombay at twenty-five cents, except the 25,000 cases required for ballast, which were to go to Calcutta at twenty-one and a half cents, and that in consequence of the charter not so *503 providing he has sustained damage to the amount of $2,655.?! If the phrase in dispute had been used in letters of instruction from the plaintiff to the defendants, no liability would have attached to the latter on account of the ambiguity of the words used, for where language is ambiguous, and the agent bona fide adopts a permissible construction, the principal cannot, on the ground that such construction was not intended by him, disown and dishonor the act of the agent. Ireland v. Livingston, L. R., 2 Q. B., 99; 5 id., 516; L. R., 5 Eng. & Irish App., 395; Wharton on Agents, §§ 224, 248 ; Benj. on Sales, Perkins ed., § 590. The plaintiff contends that because the ambiguous language wen used by the agent the converse of the rule is applicable, and the phrase is to be interpreted in the sense most beneficial to the plaintiff. Wright v. Williams, 20 Hun, 322; Jones on Const, of Com. Cont., § 228.
The trial-judge held that the cablegram by defendants to plaintiff, “ sufficient cargo ballasting Calcutta,” meant that there would be at least sufficient cargo left at Bombay to constitute ballast for Calcutta, so that the plaintiff would be under no expense to buy ballast. The cablegram also admits of the technical construction applied to it by the plaintiff, that “ sufficient cargo ballasting Calcutta” means enough, adequate to wants, or equal to the end proposed ; not more than required for the trip to Calcutta.
Which construction is to control ? The answer to this query naturally suggests another. Suppose the literal words of tho cablegram had been inserted in the charter, what construction would then be placed upon them, for if the charterers would not in that event have been held to the construction urged against the ship brokers, it is clear the latter are not liable in this action. The rule requiring instruments to be construed “ contra proferentem ” is not always of special value, and is most applicable to cleedspoll. In cases of mutual promises, where neither party is more the undertaker than the other, the rule has no application. 2 Parsons on Cont., 6th ed., 505 to 510.
Testing the liability of the defendants by this rule, considering the situation and relation of the parties at the time, the subject matter of the contract, the option and discretion asked for, and not refused, the combination of the two ports expressly permitted, the absence of controlling expert evidence proving the meaning among shippers of the technical terms used in the cablegram, we are of opinion that the contract legally bears the construction put upon it by the trial judge, and that such construction must, •for the purposes of this case, be adopted as the one controlling. True, the plaintiff as an expert gave his opinion as to the meaning of the technical terms used, and this sustains his construction thereof, but the plaintiff did not ask to go to the jury on that question, but requested the direction of a verdict in his favor.
The defendant, on the other hand, insisted upon the dismissal of the complaint. It is evident, therefore, that both parties treated the question involved as one of law for the court, and not of fact for the jury. The plaintiff was interested in the result, and his evidence' not controlling, Elwood v. Tel. Co., 45 N. Y., *504 549; Kavanagh v. Wilson, 70 id., 177; Honegger v. Weltstein, 94 id., 252; Canajoharie Nat. Bank v. Diefendorf, 123 id., 191; 33 St. Rep., 389, so that the trial court had the right to dispose of all there was to the contention. Reck v. Ins. Co., 130 N. Y., 160; 41 St. Rep., 250; Page v. Voorhies, 40 id., 696; Reilly v. Lee, 41 id., 559.
The defendants are not charged with breach of instructions nor of fraudulent conduct. All that is claimed against them is that the charter they entered into was not, for the reasons before stated, authorized by the cablegrams and correspondence which passed between the parties, and that they are, in consequence, liable for the damages claimed.
The fact that the ‘‘ Lancing ” was a water ballast ship was unknown to the defendants until after the plaintiff’s letter dated June 14th, received long after the charter was made, so that this feature has no bearing whatever upon the rights of the parties, in no manner affects the liability sought to be enforced, and throws no light upon the transaction. Though the question involved is close, and the conclusion reached not free from doubt, we think that substantial justice has been done, and that the judgment appealed from should be affirmed, with costs.
Sedgwick, Oh. J., concurs.